IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**NORMAN LAUNI, II,**

    **Plaintiff,**

v.                                                       **CIVIL ACTION NO.: 3:19-CV-65 (GROH)**

**THE HAMPSHIRE COUNTY
PROSECUTING ATTORNEY'S OFFICE,
THE MORGAN COUNTY
PROSECUTING ATTORNEY'S OFFICE,
THE MINERAL COUNTY
PROSECUTING ATTORNEY'S OFFICE,
DAN JAMES, JR., Individually and
in his official capacity as Prosecuting Attorney
for Hampshire and Morgan Counties,
JOHN OURS, Individually and in his
official capacity as Prosecuting Attorney
for Hampshire and Morgan Counties,
JOHN OURS, Individually and in his
official capacity as Special Prosecutor
in Mineral County, CORPORAL SCOTT NAZELROD,
Individually and in his official capacity
as a West Virginia State Trooper,
COLONEL CAHILL, Superintendent of the
West Virginia State Police, in his official capacity,
THE COUNTY COMMISSION OF HAMPSHIRE COUNTY, WEST VIRGINIA,
THE COUNTY COMMISSION OF MORGAN COUNTY, WEST VIRGINIA
And THE COUNTY COMMISSION OF MINERAL COUNTY, WEST VIRGINIA,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING THE
## COUNTY AND PROSECUTING ATTORNEY DEFENDANTS' MOTION TO DISMISS

Currently pending before the Court is a Motion to Dismiss filed jointly by all remaining Defendants, styled as the "County and Prosecuting Attorney Defendants." ECF No. 40. The Plaintiff filed a Memorandum in Opposition to the Defendants' Motion

1

to Dismiss. See ECF No. 42-1.[1] The Defendants filed a Reply in Support of their Motion to Dismiss, and the matter is now fully briefed and ripe for the Court's consideration. ECF No. 44.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2019, Norman Launi, II ("Plaintiff") filed a complaint in this Court pursuant to 42 U.S.C. § 1983. ECF No. 1. On July 3, 2019, the Plaintiff sought leave to amend his complaint prior to serving the named Defendants. ECF No. 2. The Court granted the Plaintiff's motion [ECF No. 3] and the Plaintiff's amended complaint [ECF No. 4] was filed on July 15, 2019. The claims in the amended complaint arise out of his arrest and criminal trial for domestic battery and assault. The background facts of the Plaintiff's alleged unlawful arrest and prosecution are as follows.

On August 16, 2016, Captain John Eckerson died. His death was believed to be caused by exposure to illicit substances during a field test. Defendant Dan James ("Mr. James"), who was at the time the prosecuting attorney for Hampshire County, West Virginia, made allegations that the Plaintiff was involved in Captain Eckerson's death— even though Mr. James knew the Plaintiff was out of town at the time of his death. Defendant James contacted the West Virginia State Police to investigate the matter. Defendant Corporal Scott Nazelrod was assigned to investigate the matter.

The Plaintiff alleges that in December of 2016, Penny Hartman, the Plaintiff's former partner, began harassing the Plaintiff. On January 25, 2017, Mr. James notified Cpl. Nazelrod that he had been contacted by Ms. Hartman who informed him that she

---

[1] The Plaintiff filed a Motion for Leave to file a Response exceeding the page limitation allowed by the Local Rules, which the Court granted. See ECF No. 43. However, the Plaintiff never separately filed his Response upon the docket. Nonetheless, the Court still considered the Plaintiff's Response, which was attached to his Motion for Leave.

had video recordings of the Plaintiff committing domestic violence against her. Mr. James asked Cpl. Nazelrod to investigate the matter. After interviewing Ms. Hartman about her claims, Cpl. Nazelrod assisted Ms. Hartman in obtaining a domestic violence protective order against the Plaintiff. The protective order required the Plaintiff to relinquish his firearms. Cpl. Nazelrod also interviewed the Plaintiff regarding Ms. Hartman's claims. During this interview, the Plaintiff denied any physical assault and gave an alibi or explanation for each of Ms. Hartman's allegations. The Plaintiff alleges that Cpl. Nazelrod's investigation into Ms. Hartman's claims took place while he was supposed to be investigating the death of Captain Eckerson.

On February 18, 2017, the domestic violence protective order was dismissed at Ms. Hartman's request. On April 6, 2017, the Plaintiff was informed that Ms. Hartman still wanted to pursue domestic violence charges against him. The Plaintiff sought to pursue allegations of stalking and harassment against Ms. Hartman, but Cpl. Nazelrod laughed at the Plaintiff's request and said he could not take cross complaints.

On April 7, 2017, the Plaintiff was charged with three counts of domestic battery and one count of domestic assault. The criminal complaint did not include any of the information from the Plaintiff's interview with Cpl. Nazelrod. The Plaintiff alleges that the criminal complaint was prepared by Mr. James. After the Plaintiff's arraignment, he was required to relinquish his guns and badge. Ms. Hartman attempted to get the charges against the Plaintiff dismissed, but she was unsuccessful. Ms. Hartman informed the Plaintiff that she was intimidated into bringing the charges and testifying at the trial. While going through discovery in preparation for trial, the Plaintiff noticed that a portion of his interview with Cpl. Nazelrod was not in discovery. The Plaintiff recorded the interview on

his own recording device, so he still had access to the entire conversation, including the portion not provided in discovery.  The Plaintiff avers that the interview was edited to remove any portion mentioning Mr. James.  The Plaintiff's case ultimately proceeded to trial and, he was acquitted of all the charges against him.

In the Plaintiff's instant amended complaint, he asserts fifteen claims for relief. The Plaintiff claims Mr. James, Mr. Ours and Cpl. Nazelrod each violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. The Plaintiff further asserts that Mr. James, Mr. Ours and Cpl. Nazelrod each violated his due process rights under W. Va. Const. art. III, §§ 10 and 14. The Plaintiff asserts Mr. James, Mr. Ours and Cpl. Nazelrod each violated his Fourth and Fourteenth Amendment right against unreasonable seizure. The Plaintiff further asserts a claim for vicarious liability against the Hampshire County Commission for the constitutional violations committed by Mr. James; the Morgan County Commission for the constitutional violations committed by Defendant James; the Mineral County Commission for the constitutional violations committed by Mr. Ours; the Hampshire County Prosecutor's Office for constitutional violations committed by Mr. James; and the Morgan County Prosecuting Attorney's Office for constitutional violations committed by Mr. James. The Plaintiff asserts a claim for negligent training and oversight against Defendant Colonel Cahill of the West Virginia State Police.  The Plaintiff also asserts three alternate counts against the Morgan County Commission, the Hampshire County Commission and the Mineral County Commission for negligent training and oversight.

This Court previously dismissed Counts 7–9 and 13, which comprised all counts against Cpl. Nazelrod, the West Virginia State Police and Col. Cahill.  See ECF No. 36.

Thus, the Court now considers whether counts 1–6, 10–12, 14–15 and alternative counts 1–3 can survive the Defendants' Motion to Dismiss.

## II. APPLICABLE LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the pleading standard under Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, the court assumes that the complaint's well-pleaded allegations are true, resolves all doubts and inferences in favor of the plaintiff and views the allegations in a light most favorable to the plaintiff.  Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).  Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79.  A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral

5

to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### III. DISCUSSION

As an initial matter, the Defendants argue that the issues of whether probable cause existed to charge and prosecute the Plaintiff and whether a due process violation occurred are controlled by collateral estoppel. In a prior Order granting the motion to dismiss filed by Cpl. Nazelrod, the West Virginia State Police and Col. Cahill, the Court concluded that the Plaintiff failed to allege a Brady violation because his trial resulted in an acquittal and there were sufficient details in the criminal complaint against the Plaintiff to establish probable cause. See ECF No. 36 at 7–8 & 10–11.

In response, the Plaintiff simply reasserts that the Court was incorrect when it decided these issues in its prior Order; however, the Plaintiff advances no legitimate argument that issue preclusion, or collateral estoppel, does not apply. Accordingly, the Court concludes that its prior holding, insofar as it is applicable to the instant motion, is controlling upon those specific issues that were previously determined by the Court.

**A.     Absolute Prosecutorial Immunity Shields Defendants James and Ours**

The Fourth Circuit has clearly explained when a prosecutor enjoys absolute immunity:

> A prosecutor enjoys absolute immunity for prosecutorial functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In other words, absolute immunity is afforded prosecutors when acting "within the advocate's role." *Buckley v. Fitzsimmons,* 509 U.S. 259, 278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Dababnah v. Keller-Burnside, 208 F.3d 467, 470 (4th Cir. 2000).

Prosecutorial immunity is not confined to the walls of a courtroom. Instead, it includes "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993) (citations and quotations omitted). "A prosecutor acts as an advocate or 'officer of the court' when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in 'an out-of-court effort to control the presentation of [a] witness' testimony,' and (5) making a 'professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made.'" Broadnax v. Pugh, No. CV 5:15-03736, 2017 WL 5617768, at *3 (S.D. W. Va. Oct. 24, 2017), report and recommendation adopted, No. 5:15-CV-03736, 2017 WL 5585630 (S.D. W. Va. Nov. 20, 2017) (collecting cases).

The Plaintiff argues that "Defendant James is not subject to absolute immunity for procuring a prosecution devoid of probable cause . . . ." ECF No. 42-1 at 14. The Plaintiff further contends that Defendant James "interviewed witnesses associated with the case and directed law enforcement in the course of their investigation." Id. at 15. Thus, the Plaintiff argues, "it is beyond clear that [Defendant James] is not entitled to the protective cloak of absolute immunity." Id. The Plaintiff also argues that because Defendant James was the elected prosecutor in another county than where the prosecution took place, he is not entitled to immunity. See Id. at 14–16.

As explained supra, the Court previously found that probable cause existed; to the extent the Plaintiff's arguments rely upon a lack of probable cause, those arguments are

7

soundly rejected for reasons more fully explained in the Court's prior Order. The Fourth Circuit "has held that a state prosecuting attorney is absolutely immune from liability for damages for conspiring with police officers to present false testimony and for withholding exculpatory evidence prior to trial, as those actions are 'intimately associated with the judicial process.'" Smith v. McCarthy, 349 F. App'x 851, 859 (4th Cir. 2009) (quoting Carter v. Burch, 34 F.3d 257, 262–63 (4th Cir. 1994)). The scenario the Fourth Circuit described in Smith is the crux of the Plaintiff's allegations in the instant case. Accordingly, the Court finds that Defendant James enjoys absolute prosecutorial immunity from the Plaintiff's claims. This analysis applies with equal force to the allegations against Defendant Ours, and therefore, the Court concludes that Defendant Ours also enjoys absolute immunity.

**B.     Defendants James and Ours Also Enjoy Qualified Immunity**

Assuming *arguendo* that absolute immunity does not apply to every claim against Defendants James and Ours, they are still shielded by qualified immunity. Courts must consider the following threshold question when determining whether a defendant is entitled to qualified immunity: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. Id. On the other hand, if a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. See id.

However, courts may address whether the right is clearly established first. See Pearson v. Callahan, 555 U.S. 223 (2009). The Pearson Court noted that the doctrine of

qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson at 230.

It is without doubt that qualified immunity is designed "to spare a defendant not only unwarranted liability, but [also] unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Id. "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Rish v. Johnson, 131 F.3d 1092, 1094 (4th Cir. 1997). Qualified immunity exists to protect individuals in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." Doe v. Broderick, 225 F.3d 440, 446 (4th Cir. 2000).

In his Response, the Plaintiff concedes that the bases of his claims are his assertion that the prosecution lacked probable cause and committed a Brady violation. Without these necessary predicates, which the Court finds neither existed in this case, the Plaintiff offers nothing; accordingly, Defendant James and Defendant Ours are entitled to qualified immunity.

**C.    Plaintiff Did Not Properly Plead Violations of the West Virginia Constitution**

The Plaintiff also alleges Defendants James and Ours are liable for violations of Article III, §§ 10 and 14 of the West Virginia Constitution. The Plaintiff alleges that the purported Brady violation discussed above violated Article III, § 10 and his rights to a fair trial under Article III, § 14. The Plaintiff seeks *only* monetary damages as relief.

State and federal courts in West Virginia considering this question have consistently held that there is no damages remedy for violations of West Virginia's Constitution. See, e.g., S.M.B. v. W. Virginia Reg'l Jail, No. CV 3:17-1300, 2017 WL 3841894, at *5 (S.D. W. Va. Sept. 1, 2017) ("[I]n light of the near unanimous view in this district and the Court's reasoning above, the Court finds that Plaintiff cannot recover money damages for violations of the state constitution."); see also McMillion-Tolliver v. Kowalski, No. 2:13-cv-29533, 2014 WL 1329790, *2 (S.D. W. Va., Apr. 1, 2016) (Goodwin, J.) ("Without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim must fail.").

West Virginia does not have a statutory state law analogue to 42 U.S.C. § 1983, which authorizes suits for damages for certain violations of the United States Constitution. See, e.g., S.M.B. at *4; See also ECF No. 36 at 8–9. Accordingly, the Plaintiff has failed to state a claim for relief for any alleged state constitutional violations.

**D.    Prosecuting Attorney's Offices Are Not Proper Entities to be Sued**

There is no legal authority in this State that creates a prosecuting attorney's office or renders the same capable of being sued in court. See W. Va. Const., Art. IX § 9-1; see also W. Va. Code §§ 7-4-1, *et seq*. This is contrasted by such other statutorily provided-for organizations, including county boards of education, county health departments and public service districts, which are created by their respective statutes, and therefore, properly named in lawsuits as political subdivisions. See W. Va. Code § 29-12A-3(c). Simply stated, in West Virginia a "Prosecuting Attorney's Office" is not the proper entity to be named in a lawsuit.

Federal courts in West Virginia have repeatedly reached the same conclusion. See, e.g., Frederick v. W. Virginia Dep't of Health & Human Servs., No. 2:18-CV-01077, 2019 WL 1198027, at *46 (S.D. W. Va. Feb. 15, 2019), report and recommendation adopted, No. 2:18-CV-01077, 2019 WL 1173358 (S.D. W. Va. Mar. 13, 2019), reconsideration denied, No. 2:18-CV-01077, 2019 WL 1748532 (S.D. W. Va. Apr. 18, 2019) ("As noted in their Motion to Dismiss, neither the Jefferson County Sheriff's Department or the Jefferson County Prosecuting Attorney's Office are suable entities. Rather, the proper entity or entities to be sued are the elected officials of these offices or the Jefferson County Commission, which is the governing body of the County."); see also Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 874 (4th Cir. 1989); Rankin v. Berkeley Cty. Sheriff's Dep't, 222 F. Supp. 2d 802, 807 (N.D. W. Va. 2002). Plaintiff's claims against various county prosecuting attorney's offices must therefore be dismissed.

### E. Plaintiff's Monell Claims against the County Commissions Fail

In Counts 10–12, the Plaintiff alleges vicarious liability against the respective county commissions for constitutional violations on the part of Defendants James and Ours. First, these claims fail because, as the Court has explained at length, neither Defendant James nor Defendant Ours committed any underlying constitutional violation. Nonetheless, assuming their alleged conduct violated the Constitution, the Plaintiff still fails to adequately allege a claim against the county commissions.

As municipal government entities, the county commissions cannot be held liable for the alleged actions of their employees under a theory of *Respondeat Superior*. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some

nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

All § 1983 claims against municipalities have three elements: "(1) identifying the specific 'policy' or 'custom'; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the 'affirmative link' between [the] identified policy or custom and specific violation." Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 821 (1985)). When a plaintiff alleges "nothing more than a municipality's adherence to an impermissible custom," the complaint must be dismissed. Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 403 (4th Cir. 2014).

Section "1983 complaints which on critical elements of a claim merely recite legal conclusions wholly devoid of facts may properly be dismissed for insufficiency of statement." Revene, 882 F.2d at 875 (quoting Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir. 1985)). Further, "[a] single act of the type here alleged cannot suffice, standing alone, to establish the existence of such a policy." Id. (citing Tuttle, 471 U.S. at 823–824 (1985)).

In this matter, the Plaintiff has failed to adequately allege the existence of a policy or custom that satisfies the requirements of pleading a plausible Monell claim. First, he has failed to identify a policy or custom on the part of any of the county commissions.

Instead, the Plaintiff alleges only acts, not consciously adopted policies or customs from among available alternatives. Second, he has failed to identify any other persons affected by this alleged policy, which, as noted in *Revene*, is insufficient. See *Revene* at 875. He identifies only a single prosecution that he claims was unconstitutional. Accordingly, the Plaintiff has not met the requirements of Monell, and his vicarious liability claims against the county commissions must be dismissed.

### F. The County Commissions Cannot be Held Liable for Negligent Training

Finally, the Court reviews the Plaintiff's "Alternate Counts" 1–3, which allege negligent training against the county commissions. "The basic elements of any negligence claim are duty, breach of that duty, causation, and damages." Biser v. Mfrs. & Traders Trust Co., 211 F. Supp. 3d 845, 856 (S.D. W. Va. 2016). "Under West Virginia law, negligent supervision claims must rest upon a showing that the employer failed to properly supervise its employees and, as a result, those employees proximately caused injury to another." Ferrell v. Santander Consumer USA, Inc., 859 F. Supp. 2d 812, 817–18 (S.D. W. Va. 2012). "Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised." Taylor v. Cabell Huntington Hosp., Inc., 208 W. Va. 128, 538 S.E.2d 719, 725 (2000).

No negligent training claim can arise because the Plaintiff was prosecuted upon probable cause, and no actionable Brady violation occurred. The Plaintiff offered no arguments otherwise in response to the Defendants' Motion. An underlying actionable act is a prerequisite to properly alleging a negligent training claim, and therefore, the Plaintiff's negligent training claim fails as a matter of law.

## IV.     CONCLUSION

Based on the foregoing, the County and Prosecuting Attorney Defendants' Motion to Dismiss [ECF No. 40] is **GRANTED**. Specifically, for the reasons more fully stated above, Counts 1–3 against Defendant James; Counts 4–6 against Defendant Ours; Counts 10–12 and Alternate Counts 1–3 against the county commissions; and Counts 14–15 against the Hampshire and Morgan County Prosecuting Attorney's Offices are hereby **DISMISSED WITH PREJUDICE**.

Accordingly, because all counts and alternate counts within the Plaintiff's Amended Complaint are dismissed, the Clerk of Court is **DIRECTED** to **STRIKE** this Civil Action from the Court's active docket. The Clerk is further **DIRECTED** to terminate all pending motions and to transmit copies of this Order to all counsel of record herein.

**IT IS SO ORDERED**.

**DATED**: August 20, 2020

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE